CARAWAY, J.
The municipal clerk of the Town of Waterproof, Louisiana, instituted this in-junctive action against the mayor of the town seeking to prohibit the mayor from *770 interfering with the clerk’s job duties and compensation. The court granted the clerk’s temporary restraining order and a hearing on the preliminary injunction ensued. After hearing testimony, the trial court issued a preliminary injunction forbidding the mayor from taking any action that would upset the status quo of the clerk’s job duties and employment in violation of applicable statutory provisions. The mayor appeals the judgment. We affirm.

Facts

On May 14, 2009, Tonya Barlow (“Barlow”), town clerk of Waterproof, instituted suit against Waterproof, its mayor, Bobby Higginbotham, and police chief, Miles Jenkins. The suit included claims relating to unlawful employment practices due to discrimination and retaliation, whistleblower protection and damages for tort claims of assault and battery, false imprisonment and defamation. As part of her petition, Barlow also sought injunctive relief against Higginbotham to prohibit him from engaging in unlawful employment policies and commanding him to reinstate Barlow to her position and pay grade. Barlow cited several alleged instances of Higginbotham’s attempts to remove Barlow from her office or interfere with her duties.
Barlow alleged that on January 31, 2007, she was employed by Waterproof as the town clerk. Higginbotham had assumed the office of 12mayor on January 1, 2007. According to Barlow, in early 2008, several disagreements arose between her, the mayor and the police chief over the processing of speeding tickets and the withholding of out-of-state drivers’ licenses from ticketed drivers. Barlow claimed that in April of 2008 the mayor, in alleged retaliation, began to reduce her duties and minimize her authority.
The list of alleged mayoral actions against Barlow were asserted as follows: May 2008—
• Higginbotham refused to allow Barlow to assist state auditors.
• Placed Barlow on leave pending meeting with the Board of Aldermen (“Board”).
• Accused Barlow of breaching duties by written memo to Board.
• Suspended Barlow without pay after Board reinstated her to position.
• Called a meeting of Board to terminate Barlow which was denied.
• Barlow received check which indicated that higher amount was salary plus severance pay.
• Higginbotham requested Barlow to return to work without penalty with a confirmed salary of $30,000.
June 2008—
• Barlow returned to work as full-time town clerk.
• Mayor informed Barlow she would sit at a desk by the back door out of the public view and was no longer allowed to be in the office alone, answer the phone, have access to the office computer system, accept or handle payments for the town, check mail, sign checks, have an office key or let anyone enter the office building and was required to clock in on a time card. Barlow’s sole duties were to organize tickets, the tax roll and office filing.
• On same day, Barlow’s duties changed to part-time.
• Barlow’s paycheck was reduced significantly.
September 2008—
• Mayor sought to lay off Barlow; Board denied the request.
• Mayor sought to lay off Barlow; Board denied request.
*771 • Mayor terminated Barlow’s employment for lack of funds.
• At request of Board, Barlow returned to her position as Town Clerk. When police action was threatened, Barlow left.
• Barlow was refused entry to the office for one week.
la* Board unanimously approved Barlow’s return to work.
• Barlow returned to work.
December 2008—
• Mayor laid off all town employees including Barlow.
February 2009—
• Board requested that Barlow record minutes of meeting.
March 2009—
• Mayor requested termination of Barlow who was still on layoff. Board voted to reinstate Barlow.
• Barlow returned to work with full-time duties.
• Mayor had Barlow arrested for trespassing but changed his mind and ordered officers to remove handcuffs.
• Barlow filed criminal charges against Higginbotham.
• In criminal proceedings, district judge enjoined Mayor from “terminating or interfering” with Barlow’s employment.
April 2009—
• Board convened into executive session; Mayor wanted discharge of Barlow in exchange for discharge of chief of police.
May 2009—
• Barlow attached the affidavit of Alderman Lionel Travers to petition in support of this claim.
Based upon these allegations, the trial court granted a temporary restraining order on May 14, 2009, enjoining and prohibiting Higginbotham from “directly or indirectly” interfering with the employment, job duties and the compensation of the town clerk. At the preliminary injunction hearing[1] which ensued, Barlow and Aider-man Lionel Travers testified. Travers testified that at an executive session meeting of the Board of Aldermen, on April 13, 2009, Higginbotham wanted Barlow fired in exchange for the termination of employment of the chief of police, which was apparently the desire of the Board of Aldermen. No decision was made by the Board of |4 Alder man. Barlow testified consistently with the facts set forth in her pleadings.
After hearing the arguments of counsel, the trial court granted Barlow’s request for a preliminary injunction maintaining the status quo of Barlow as the town clerk. The Court requested that Barlow’s counsel reduce the judgment to writing. The judgment was signed by the court on June 26, 2009. The trial judge forwarded the judgment to the Clerk of Court of Tensas Parish on July 1, 2009, with a request that the clerk “provide a certified copy of the above Order on Motion to all counsel of record by certified mail.” The signed judgment was filed into the record on July 8, 2009. A computer printout[2] from the Tensas Parish Clerk of Court’s Office shows that certified copies were mailed on *772 July 8, 2009. Higginbotham’s eventual motion for appeal was filed on July 22, 2009, and signed by the trial judge on July 28, 2009.
The judgment denied Higginbotham’s exception of no cause of action and decreed that Barlow was the duly appointed town clerk. Further, the court made a determination that Higginbotham’s repeated firing and micromanagement of Barlow’s duties caused irreparable harm to Barlow and Waterproof. Thus, the court extended the temporary restraining order to a preliminary injunction “forbidding Mayor Higginbotham from taking any action that would upset the status quo of Tonya Barlow’s job duties and employment as the town clerk unless such action is taken in accordance | r,with La. R.S. 33:404 and any applicable Town Ordinances pursuant to that section.”

Discussion

I.

Regarding the timeliness of this appeal of the preliminary injunction, La. C.C.P. art. 3612(C) provides, in pertinent part, as follows:
An appeal from an order or judgment relating to a preliminary injunction must be taken, and any bond required must be furnished, within fifteen days from the date of the order or judgment.
The courts have held that this 15-day delay does not commence to run on a judgment granting or denying a preliminary injunction until the judgment is signed. Metro Riverboat Assoc., Inc. v. Hilton Hotels Corp., 99-2271 (La.App. 4th Cir.11/10/99), 746 So.2d 809; Marlbrough v. Zar, 98-38 (La.App. 5th Cir.5/27/98), 713 So.2d 1163. Generally, however, the mailing of notice of judgment, not the signing of judgment itself acts as the triggering event for commencing the delay for filing both suspensive and devolutive appeals. La. C.C.P. Art. 2087; Fraternal Order of Police v. City of New Orleans, 02-1801 (La.11/8/02), 831 So.2d 897.
The filing of the signed judgment into the suit record occurred within fifteen days of Higginbotham’s motion for appeal. Accordingly, we find this appeal to be timely.

II.

In challenging the injunction against him, Higginbotham argues that the trial court should have granted his exception of no cause of action because as a matter of law the preliminary injunction which enjoins the mayor from “interfering” with a town employee impinges upon the mayor’s statutory duty to supervise the town clerk found in La. R.S. 33:404. Higginbotham also contends that the trial court erred in considering Waterproof Ordinance 173 which was not introduced into evidence. Additionally, Higginbotham complains that the trial court’s determinations that Barlow was the town clerk and that the mayor fired and micromanaged Barlow were matters more appropriately reserved for the trial on the permanent injunction. Higginbotham further argues that a determination that the Town of Waterproof was irreparably harmed by the mayor’s actions was improper because the Town was not a party to the proceedings. Finally, Higginbotham contends that the preliminary injunction judgment fails to describe in detail the acts sought to be restrained as it lists unnamed statutes, fails to set forth what the status quo of Barlow’s employment is and does not inform him of what actions he can or cannot take.
A preliminary injunction is an interlocutory procedural device designed to preserve the existing status pending a trial of the issues on the merits of the case. Lake Bistineau Preservation Soc., Inc. v. *773 Seales, 40,583 (La.App. 2nd Cir.2/10/06), 922 So.2d 768, writ denied, 06-0620 (La.5/26/06), 930 So.2d 27. The courts have generally held that a preliminary injunction is designed to preserve the status quo pending a trial of the issues on the merits of the case. Lake Bistineau, supra; Silliman Private School Corp. v. Shareholder Group, 00-0065 (La.App. 1st Cir.2/16/01), 789 So.2d 20, writ denied, 01-0594 (La.3/30/01), 788 So.2d 1194. Generally, a party seeking the issuance of a preliminary injunction must show that he will |7suffer irreparable injury if the injunction does not issue; this is accomplished by a prima facie showing that the party will prevail on the merits of the case. Concerned Citizens for Proper Planning, LLC. v. Parish of Tangipahoa, 04-0270 (La.App. 1st Cir.3/24/05), 906 So.2d 660. A showing of irreparable injury is not necessary, however, when the conduct sought to be restrained is unconstitutional or unlawful, ie., when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law and/or violation of a constitutional right. Jurisich v. Jenkins, 99-0076 (La.10/19/99), 749 So.2d 597.
The applicable statutes concerning the office of the clerk under the mayor-board of aldermen form of municipal government are, in pertinent part, as follows:
La. R.S. 33:381
A. The officers of every municipality shall be a mayor, aldermen, a chief of police, a tax collector, and a clerk.
[[Image here]]
La. R.S. 33:386
A. At the first regular meeting of the board of aldermen succeeding each regular municipal election, the mayor, subject to confirmation by the board of aldermen, shall appoint a clerk, tax collector, except as provided for in R.S. 33:381(D), and all other necessary officers whose election is not provided for in R.S. 33:381. In the event of a vacancy, the mayor, subject to confirmation by the board of aldermen, shall appoint a successor to any such office. In making or approving such appointments and in filling vacancies, the mayor and board of aldermen shall give preference to residents of the municipality if all other considerations are equal.
* * * *
D. The term of the clerk, tax collector, nonelected chief of police, street commissioner, municipal attorney, and court magistrate shall end at the time of the first regular meeting of the board of aldermen succeeding each regular municipal election.
|sLa. R.S. 33:404.
A. The mayor shall have the following powers, duties, and responsibilities:
(1) To supervise and direct the administration and operation of all municipal departments, offices, and agencies, other than a police department with an elected chief of police, in conformity with ordinances adopted by the board of aldermen and with applicable provisions of state law; however, no such ordinance may limit the authority granted to the mayor by this Paragraph. All administrative staff shall be subordinate to the mayor.
(2) To delegate the performance of administrative duties to such municipal officers or employees as he deems necessary and advisable.
(3) Subject to applicable state law, ordinances, and civil service rules and regulations, to appoint and remove municipal employees, other than the employees of a police department with an elected chief of police. However, appointment or removal of a nonelect-ed chief of police, the municipal clerk, the municipal attorney, or any depart *774 ment head shall be subject to approval by the board of aldermen, except that in the case of a tie vote, the recommendation of the mayor shall prevail. Furthermore, selection or removal of any person engaged by a municipality to conduct an examination, review, compilation, or audit of its books and accounts pursuant to R.S. 24:517 shall be subject to approval by the board of aldermen of that municipality.
* * * *
From the above provisions of our law for governance of a mayor-board of aldermen municipality, the clerk of the town is an officer who serves for a term in office. La. R.S. 33:381 and 33:386(D). The office is filled by the combined actions of the mayor and board of aldermen, and the appointed clerk may not be removed from office except by the concurrence of the mayor and the board of aldermen. La. R.S. 33:386(A) and 33:404(A)(3). The clerk has many defined statutory duties including, but not limited to, acting as auditor, La. R.S. 33:422, tax collector or assessor, La. R.S. 33:381, signing, presenting, receiving, publishing and keeping a book relating to enacted ordinances, La. R.S. 33:406, keeping records of | ¡¡proceedings, municipal business and actions against the municipality and custodian of the municipal seal, La. R.S. 33:421.
In this case, Mayor Higginbotham’s actions concerning the office of the clerk were properly judged by the trial court to have extended well beyond his general powers of supervision and direction of the administration of the municipality’s affairs, so that the clerk’s defined duties owed to the municipality were violated. This balance between the mayoral power and the clerk’s duties must exist unless the mayor and the board of aldermen agree to the clerk’s removal. That has not occurred in Waterproof, and the order of the trial court for the preliminary injunction is a proper effort to judicially recognize the balance which must operate for the municipality’s benefit. Our review of the language employed in the injunctive order convinces us that a clear judicial directive has been given to the mayor, and any continuance of his prior actions encroaching upon the functions of the office of clerk as reviewed at the hearing before the trial court may lead to appropriate future sanctions. Accordingly, we reject Higginbotham’s arguments and affirm the preliminary injunction. Costs of this appeal are assessed to appellant, Bobby Higginbotham.
AFFIRMED.

. On the day of the scheduled hearing, Higginbotham filed a peremptory exception of no cause of action which was denied by the trial court.

. On December 10, 2009, this court issued a rule to show cause why this appeal should not be dismissed as untimely on the grounds that the judgment was dated June 26, 2009, but the appeal was not granted until July 28, 2009. Supplementation of the record was provided revealing the above procedural history.